UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

KRC CUSTOM MANUFACTURING, INC.                    CIVIL ACTION NO. 20-97

VERSUS                                            JUDGE ELIZABETH E. FOOTE

SALES USA, INC.                                   MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Now before the Court is a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), filed by Defendant Sales USA, Inc. ("Sales USA"). [Record Document 7]. Plaintiff KRC Custom Manufacturing, Inc. ("KRC") filed an opposition. [Record Document 10]. For the reasons discussed below, Sales USA's motion is **DENIED**.

## BACKGROUND

This is an action brought in diversity to recover sums due on open accounts. Sales USA is a Texas corporation with its principal place of business in Gladewater, Texas. Record Document 7-2, ¶ 5. KRC is a Louisiana corporation with its principal place of business in Homer, Louisiana. Record Document 1, p. 1. Sales USA d/b/a Pompeii "is in the business of bottling and distributing citrus products to grocers for sale to the public." Record Document 7-2, ¶ 6. Sales USA sold the Pompeii product in Louisiana until 2018. *Id.* ¶ 12. According to KRC, Sales USA contacted KRC in 2006, "requesting that KRC manufacture plastic bottle caps ('caps') and plastic juice bottle inserts ('inserts') for Sales USA's business as a beverage bottling company." Record Document 10-1, ¶ 2. KRC contends that Sales USA knew that KRC only operated in Claiborne Parish, Louisiana. *Id.* ¶ 3. KRC avers that Sales USA "required the caps and inserts to be manufactured using its specific plastic bottle cap mold and its specific plastic bottle insert mold," which Sales USA would send to KRC's Louisiana facility. *Id.* ¶ 4. KRC alleges that from 2006 to 2018 Sales

1

USA placed over 150 orders, which totaled in excess of $2,000,000, and sent payments on the open

accounts to Louisiana. Record Document 1-3; ¶¶ 2–5. KRC asserts that Sales USA "began falling

behind" on payments in 2016 and now owes $357,150.18 from orders placed between 2016 and

2018. Record Document 1, ¶¶ 8–12. KRC seeks "all sums due" on the open accounts, as well as

attorney's fees, legal interest, and court costs. *Id.* ¶ 14. Sales USA responded to the complaint by

filing an answer and the instant motion to dismiss for lack of personal jurisdiction. Record

Documents 5 & 7.

## LAW & ANALYSIS

### I.       Personal Jurisdiction Standard

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes a motion to dismiss for

lack of personal jurisdiction. When a defendant challenges the existence of personal jurisdiction,

the plaintiff bears the burden of proving that jurisdiction does indeed exist. *See Guidry v. United

States Tobacco Co.*, 188 F.3d 619, 626 (5th Cir. 1999). On a pretrial motion such as this one where

no evidentiary hearing is held, the uncontroverted allegations in the plaintiff's complaint must be

taken as true and any conflicts between facts contained in the parties' affidavits must be resolved

in the plaintiff's favor. *See Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). Those facts must

create for the plaintiff only a *prima facie* showing of jurisdiction. *See Travelers Indemnity Co. v.

Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir. 1986). If the plaintiff satisfies that minimal

standard, it must still prove the jurisdictional facts at trial or through a hearing by a preponderance

of the evidence before it may obtain relief on the merits against the non-resident. *See id.*; *Felch v.

Transportes Lar-Mex*, 92 F.3d 320, 326 (5th Cir. 1996).

A federal court sitting in diversity, like this one, must satisfy both the statutory and

Constitutional requirements of personal jurisdiction: the state long-arm statute must confer

jurisdiction over the defendant, and the court's exercise of personal jurisdiction must be consistent

with due process. *See Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 294 (5th Cir. 1999). The

Louisiana long-arm statute is coextensive with the limits of constitutional due process, merging the

statutory and constitutional analyses into one. *See* La. R.S. § 13:3201(B); *A&L Energy, Inc. v.*

*Pegasus Group*, 2000-3255 (La. 6/29/01); 791 So. 2d 1266, 1270.

Due process requires both that a defendant have sufficient minimum contacts with the forum

state and that the exercise of jurisdiction is consistent with traditional notions of fair play and

substantial justice. *See Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243

(5th Cir. 2008). A defendant's contacts with the forum state can support either general or specific

jurisdiction. *Marathon Oil*, 182 F.3d at 295. General jurisdiction exists when the defendant's

contacts with the state are "continuous, systematic, and substantial," *id.*, a test that "is a difficult

one to meet, requiring extensive contacts between a defendant and a forum." *Johnston v. Multidata*

*Sys. Int'l Corp.*, 523 F.3d 602, 608 (5th Cir. 2008). "Random, fortuitous, or attenuated contacts are

not sufficient to establish jurisdiction." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312

(5th Cir. 2007).

Specific jurisdiction exists when the defendant's contacts with the state arise from or are

directly related to the cause of action. *See Marathon Oil*, 182 F.3d at 295. The non-resident

defendant must have "purposefully directed its activities at the forum state and the litigation results

from alleged injuries that arise out of or relate to those activities." *See Walk Haydel & Assoc.*, 517

F.3d at 243. In sum, for specific jurisdiction to be applied, it must be shown that "(1) there are

sufficient (i.e. not random fortuitous or attenuated) pre-litigation connections between the non-

resident defendant and the forum; (2) the connection has been purposefully established by the

defendant; and (3) the plaintiff's cause of action arises out of or is related to the defendant's forum

contacts." *Pervasive Software, Inc v. Lexware GmbH & Co. KG*, 688 F.3d 214, 221–22 (5th Cir. 2012) (internal marks omitted). If a plaintiff makes the above showing, then the defendant can defeat specific jurisdiction by showing that "it would fail the fairness test, i.e., that the balance of interest factors show that the exercise of jurisdiction would be unreasonable." *Id.* The burden is on the defendant to show the assertion of personal jurisdiction would offend traditional notions of fair play and substantial justice.

## II.     Analysis

Here, KRC asserts that the Court may exercise general or specific jurisdiction over Sales USA. *See* Record Document 10. Sales USA counters that its contacts are too few to be haled into a court in Louisiana and that forcing it to defend itself in Louisiana offends traditional notions of fair play and substantial justice. *See* Record Document 7-1. The Court finds that it has specific jurisdiction over Sales USA for the following reasons.

To begin, the Court notes that KRC's claim for money due on open accounts sounds in contract. When a plaintiff asserts a contractual or other non-tort claim, the personal jurisdiction inquiry turns on a number of factors, "including whether the contract or breach thereof occurred in the state, the number of contacts the defendant has had with the state, and a balancing of the convenience to the plaintiff of maintaining the suit in the state against the inconvenience to the defendant of defending the action there." *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 490 n.4 (5th Cir. 2018) (quoting 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069.1 (4th ed.)). As stated by the Fifth Circuit, "[s]pecific jurisdiction may be found when a foreign defendant has purposefully directed [its] activities at residents of the forum. Because specific personal jurisdiction is a claim-specific inquiry, only those acts which relate to the formation of the contract and the subsequent breach are relevant." *Id.* at 489 (cleaned up). Courts

have looked to relevant facts such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to establish purposeful availment. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)). Merely contracting with a forum plaintiff is insufficient to establish minimum contacts. *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009). Further, "[j]urisdiction must not be based on the fortuity of one party residing in the forum state" or the unilateral activity of the forum plaintiff. *Id.*

Sales USA largely relies on the reasoning from *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026 (5th Cir. 1983), for the proposition that a forum plaintiff's unilateral activities of manufacturing and shipping goods from Louisiana is insufficient to establish minimum contacts. However, *Hydrokinetics* is distinguishable from the present case. In *Hydrokinetics*, an Alaskan corporation was approached by a Texas business who sought to supply the Alaskan corporation for a forthcoming project in Alaska. *Id.* at 1027. The parties negotiated some of the contract in Texas and over the phone from each party's respective state. *Id.* The Alaskan corporation sent two executives to Texas to close the deal. The Texas company built the equipment in Texas and delivered it to Washington to be transported to Alaska. The contract had an Alaska choice of law provision. After the Alaskan company rejected the goods and refused to pay, the Texas company sued in a Texas federal court. *Id.* The Fifth Circuit found that the Alaskan company did not establish minimum contacts in Texas. Important in the Fifth Circuit's decision were the following facts: (1) the forum plaintiff initiated the contact; (2) the contract contained an Alaska choice of law clause; (3) the only performance by the Alaskan company in Texas would have been payment; and (4) this was a single, isolated transaction. *See id.* at 1029.

In the present case, according to KRC, Sales USA reached out to KRC in Louisiana about forming a business relationship. Record Document 10-1, ¶ 2. This relationship was not just a single

transaction, but a relationship that lasted approximately 12 years and totaled over 150 transactions. Record Document 1-3; ¶¶ 2–5. Further, Sales USA controlled aspects of KRC's performance by requiring KRC to manufacture the caps and inserts according to Sales USA's specifications. Record Document 10-1, ¶ 4. KRC claims that Sales USA shipped molds of the caps and inserts to KRC in Louisiana that remain there to this day. *Id.* ¶ 5. The court in *Hydrokinetics* emphasized the importance of the Alaska choice of law provision. The court found that based on the choice of law clause it was not foreseeable that the defendant expected to be haled into a Texas court. *Hydrokinetic*, 700 F.2d at 1029. Here, neither party has asserted that a choice of law provision is at issue. The Fifth Circuit has given weight to the absence of a choice of law agreement, which if present could "have given the defendant reason to believe it could not be haled into court in the forum state." *Moncrief*, 481 F.3d at 313 (citing *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 383 (5th Cir. 2003)).

Although foreseeability is not the only factor, the Fifth Circuit has given great weight to it in prior cases where the forum plaintiff only operates in one state, the non-resident defendant was not a passive customer, and the "hub of activities" was in the forum state. *See id.* at 312–13 (distinguishing case from *Mississippi Interstate Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003 (5th Cir. 1982) and *Cent. Freight Lines*, 322 F.3d at 382); *Sw. Offset, Inc. v. Hudco Pub. Co.*, 622 F.2d 149 (5th Cir. 1980). In *Mississippi Interstate*, there was an oral agreement between a Mississippi trucking company and a California freight broker in which the Mississippi company would supply trucks for the California shipping business. 681 F.2d at 1005. After the California defendant failed to pay invoices, the Mississippi company sued the defendant in Mississippi federal court. *Id.* at 1004–05. The defendant argued that it was not subject to the jurisdiction of Mississippi because the negotiations took place in California, it had no presence in Mississippi, and it did not perform any

6

acts in Mississippi. *Id.* at 1005. The Fifth Circuit determined that the defendant was not merely a passive customer and exercised some control over the shipments. *Id.* at 1009. Further, the court found important that "the relationship between the parties was sustained (not 'single' or 'fortuitous'), and the plaintiff performed its part of the undertaking at its sole place of business in Mississippi as was known to the California defendant at the outset of their relations." *Id.* Ultimately, the Fifth Circuit held that "Mississippi was clearly the hub of the parties' activities." *Id.* at 1010.

Here, like *Mississippi Interstate*, Sales USA knew that KRC would perform all of its work in Louisiana because KRC's sole place of business is in Louisiana. Further, Sales USA was not merely a passive customer. Sales USA controlled the specifications of its orders and sent bottle cap and insert molds to accomplish this end. Further, the business relationship lasted approximately 12 years, which is substantially longer than the months-long relationship in *Mississippi Interstate,* and consisted of over 150 transactions, which is substantially more than the approximately 19 transactions in *Mississippi Interstate*. Additionally, Sales USA sold the finished product in Louisiana until 2018. Ultimately, the hub of this relationship was in Louisiana because nearly all significant contacts were in Louisiana, except for Sales USA's receipt of the goods. As such, Sales USA has availed itself of the protections of Louisiana law by entering into over 150 transactions with KRC over a 12-year period. Therefore, Sales USA could reasonably expect to be haled into court in Louisiana.

In summary, the Court finds that KRC has established a prima facie case that Sales USA has minimum contacts with Louisiana. KRC's complaint and affidavits establish that Sales USA purposefully directed activities at Louisiana by contacting a Louisiana company in 2006 to supply Sales USA with bottle caps and bottle inserts for its plastic bottles, which Sales USA sold in Louisiana until 2018. The business relationship required KRC to manufacture and design the bottle

caps and bottle inserts according to Sales USA's specifications. To that end, Sales USA would send specific molds of the bottle caps and inserts to KRC in Louisiana. Further, Sales USA knew that the goods would be manufactured in Louisiana because KRC only operates out of Louisiana. Additionally, this business relationship was not a single, fortuitous contact. Instead, it was a business relationship that lasted from 2006 to 2018 and consisted of over 150 transactions. Lastly, the litigation directly relates to this contact because it is a suit to seek the sums due on the open accounts from the orders placed by Sales USA.  For the reasons stated above, the Court is satisfied that KRC has made out a prima facie case of minimum contacts.

Because KRC has established minimum contacts over Sales USA, the burden shifts to Sales USA to show that the imposition of jurisdiction would be unfair, looking to traditional notions of fair play and substantial justice. *See Ruston Gas Turbines v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993). In making the fairness determination, a court must consider: "(1) the defendant's burden; (2) the forum state's interest; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies." *Id.* "It is rare to say the assertion is unfair after minimum contacts have been shown." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (citation omitted). In facing this burden, Sales USA has only stated that it is a Texas company that does not have minimum contacts with Louisiana, so it would be unreasonable and unfair to require it to defend itself in Louisiana. Record Document 7-1, p. 13. The Court finds that these conclusory statements are insufficient to meet Sales USA's burden.

In analyzing the factors above, the Court finds the exercise of personal jurisdiction over Sales USA to be reasonable. First, the burden on the defendant is minimal in this case. Sales USA resides in Gladewater, Texas, which is approximately 80 to 90 miles from the courthouse in

Shreveport, Louisiana. In comparison, KRC is located approximately 53 miles away from the courthouse. Therefore, the burden on the defendant is minimal especially considering the plaintiff must travel a similar distance. Further, Louisiana has an interest in providing a convenient forum for its corporations to obtain relief when harmed by a non-resident defendant. *Burger King*, 471 U.S. at 472. After weighing the factors above, it is evident that requiring Sales USA to litigate in this forum does not offend traditional notions of fair play and substantial justice.

After applying the specific jurisdiction test detailed above, the Court concludes that the exercise of specific personal jurisdiction over Sales USA is in accordance with due process. Therefore, Sales USA's motion to dismiss for lack of jurisdiction is **DENIED**.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Sales USA's motion to dismiss for lack of personal jurisdiction [Record Document 7] is **DENIED**.

**THUS DONE AND SIGNED** this 26th day of March, 2021.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE